The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw an eye and give their attention, for the court is now sitting. God save the United States and this honorable court. Good morning. Please be seated. We're happy to hear argument in our first case, United States v. Ocasio. Mr. Owen. Thank you, Judge Motz, and may it please the court. Under the Hobbs Act, the substantive crime of extortion is committed when a person obtains property from another with his consent under color of official right. And since the common law, as the Supreme Court affirmed in Evans, taking a bribe, if you're a public official, is the substantive crime of extortion. But it is not also a conspiracy to commit extortion, any more than a single drug sale is a conspiracy to distribute drugs. We have both here, though. We have a conspiracy charge and substantive acts. Are you only challenging the conspiracy charge? Well, our principal argument, the answer is no. The principal argument is that the conspiracy charge is invalid as a matter of law. But for the existence of the conspiracy charge, this trial would have been so different, and the evidence admitted would have been so different, that it requires reversal for a new trial on the substantive counts as well. We are not, however, challenging the sufficiency of the evidence to support the substantive counts or the legal validity of the substantive counts. You're just saying that because if the conspiracy charge goes out, they all go out. They all go out. That's your hook to get them all out. That's right, Judge Kennedy. Independently of the conspiracy, if the conspiracy's okay, then you're not challenging the substantive offenses. That's right. Substantive convictions. Yes. Substantive charge convictions. If the conspiracy charge is legally valid, then we have no independent challenge to the substantive offenses on the record. But we do think that the conspiracy charge is invalid. Because of the, you say, the jury necessarily found that the tow truck people were conspirators? Well, it's not that they necessarily found that, but to make – Well, you have to find it. You have to be arguing that. I think you have to be arguing that the jury necessarily found that they were conspirators. In one sense, we know that they must have done that. I mean, for example, if your Honor looks at – His question is, don't you have to argue that? That's his question to you. I think the answer is yes with a caveat, Judge King and Judge Kennedy. Okay. So you're amending your first answer? I'm amending my first answer. Well, you're entitled to do that. I just want to – Yeah, sure. So is that caveat going to amend the yes to be no? No, Judge Shedd. Let me explain. Under the Sixth Circuit's opinion in Brock, which we agree with, the person from whose property is obtained has to be another, that is, has to be someone outside the conspiracy. So what the government – So the question is who's in the conspiracy and then who the victim is. The question is who is in the conspiracy. And who the victim is. And whose property was obtained. That's right. That's right. There's two questions there. And you have to look at the evidence in the light most favorable to the prosecution to ascertain the answers to those questions. I think that's right, Judge King, but let me just review the evidence just slightly. If you look at the – No, as a legal principle. Yeah, as a legal principle. As a legal principle, we, and you here, both lawyers, have to view the evidence in the light most favorable to the prosecution, consistent with the evidence, consistent with the instructions, what did the jury find in order to convict your man of count one? We have no quarrel with that principle. We agree with that. Of course that's right, Judge King. The question is whether there is sufficient evidence to convince, to convict the defendant. Who were the conspirators? Who were the conspirators? Under the evidence viewed in the light most favorable to the prosecution. The conspirators were Acasio on the government's theory and, as the indictment alleges and as the substantive counts of the indictment allege, Moreno, Mejia, and perhaps Majestic. Now, what about who was named in the indictment? Who was named as a defendant in the indictment? The defendants in the superseding indictment are Acasio and Manrich. You didn't mention him. Well, I didn't mention him, Judge King, because there is no evidence that Acasio and Manrich. So you're saying that the other named defendant, under the evidence, in the light most favorable to the prosecution, couldn't have been a conspirator? No, Judge King. You aren't saying that. What I'm saying is not that he isn't a conspirator. There is no evidence that Acasio and Manrich conspired together to do anything. Well, then you're saying that the other defendant in the indictment wasn't a conspirator. I am saying that, but for a different reason, Judge King. No, but you have to be saying that, I think, to get to the point that you're trying to establish. I don't. Because if the conspirators here, assume for a moment, the conspirators here are the police officers. Okay. And there's more than just these two. There's what, 50? Sure, something like that. We're out shaking down these people. If the conspirators were the police officers, in the eyes of the jury, under the evidence, and nobody else, how can you prevail? Well, let me, if I may, let me step back and give you two answers to that question. The first is that, now that I've thought about it for a moment, under the Supreme Court's decision in Skilling and a long line of cases, if a conviction rests on a legally invalid, may rest on a legally invalid theory, rather than merely a factually invalid one. In other words, if the jury may have rested on more than one factual theory for the conviction, but one of them is legally invalid, it is constitutional error to affirm the conviction. That's what Skilling says, and cases cited in Skilling. It's not, in other words, just a matter of determining whether there's some factual evidence. But here we have a legal problem with a theory of the crime. So that's the first answer. The second answer is that there is no evidence. It would maybe, perhaps, Judge King, if there were any evidence in the record that Acasio had actually conspired with Manrich. Well, the word's going through the police department. If you send, if you call Majestic to bring their tow truck to the scene, you get 300 bucks. And a bunch of police officers jumped in. Under the evidence, every one of them is a conspirator. Well, they don't even have to know each other. The word got through to them. Everybody knew what to do to get the 300 bucks. And Majestic is the victim, a willing victim, a consenting victim, all that. Like you mentioned, bribery. It seems to me it's a classic Hobbs Act conspiracy. They're getting money into the police officers' pockets out of the tow truck operator. Well, Judge King, the government has not, as you know, principally defended the conviction on the ground you just described. Well, I understand the government. I'm just trying to figure out what the evidence shows. The government says, well, the police, Majestic is a separate corporation. That's probably a good theory, too. And these other two birds could be conspirators. But the jury didn't have to find they were conspirators. The jury could decide who the conspirators were, and we have to look at it in the light most favorable to the prosecution. And it seems to me the light most favorable to the prosecution is the guys with the badges were the bad guys. They got money on their badge. They shook down people on their badge. They got $300 for calling the tow truck operators on their badge. And they're the conspirators. And that's what the Hobbs Act says, obtaining the property of another undercolor of official right. And what's more of an official right than a fellow with a badge? Well, Judge King, we have no, I mean, that is completely right. It is certainly the substantive crime of extortion to shake someone down for money if you're a police officer and to use your badge to get it. We are not arguing about that. Our argument is the following, that the indictment and the government's theory of the case and the arguments they made and haven't waived in this court are that Ocasio conspired with the brothers Moreno and Mejia to obtain property belonging to Moreno and Mejia. But they also assert, I think as the indictment does, that the property came from Majestic. Well, Judge Shedd, it's interesting you say that about the indictment. The indictment actually says two different things in two different places. I'm looking at page 50 of the joint appendix. Yes, it does say that. I agree with that on page 50. It describes the conspiracy and it says that the officers, in essence, conspired with Moreno and Mejia to unlawfully obtain, under call of official right, money and property from Moreno and Mejia and Majestic. We agree with that, Judge Shedd. But you have to because that's what the words say. That is what it says. So I want to give you two responses to that. The first is that if you look at the substantive counts of the indictment, I mean the government's theory in this case is revealed, I think, by the substantive counts of which the defendant was, by the way, convicted. By the way, instead of saying all that, why don't you just tell me, why doesn't that set out conspiracy to take money from Majestic? That's what that says. It does. So on that, setting the substantive counts of the indictment. If that's how the indictment is read, do you lose? No. Why is that not so? It is not so for two reasons. The first is the one I mentioned before, that because the indictment also alleges that the property belonged to Moreno and Mejia, that is a legally invalid theory. And if the jury might have rested on that conviction, that theory as a factual matter. But if the jury could have found that they weren't conspirators, your theory falls apart. No, I think actually that's not right, Judge King. It might fall apart if there was no way they could find that they were conspirators. We have to look at it in the light most favorable to the prosecution. If we looked at it in the light most favorable to you, you'd be exactly right. No, I think. You would be exactly right if we had to look at it in your favor. With respect, Your Honor, I think that that. But there's a settled principle here, like plaintiffs, prosecutors get to benefit of the evidence. If this were a sufficiency of the evidence challenge, I would agree with everything that you just said. But we're not claiming that. You make the distinction back to the legal and factual basis for the determination. Yes. You made that in your brief? No, Your Honor, we didn't say that explicitly. Did you say it implicitly? Well, I think so, Your Honor, because we've. So to return to Majestic for the moment, if indeed. Let me say this. When you get back up in a minute, I want you to show me the sentence or two in your brief. It's not in your brief. No, I know it's. But go ahead. What I was. I was. What I'm trying. What I'd like to do for a minute, if I could, is address the argument raised by the government and the only argument accepted by the district court, which is that Majestic is really separate from Moreno and Mejia, that Majestic is somehow not a conspirator, but a person who owned the property. There are several items. The first is that that wasn't really what the government argued exactly. Sometimes they did, but it's an artificial way of talking, and so when you're not paying that close attention, you don't say it. The government argued in closing, and this is Joint Appendix 1208, that Ocasio was valuable to Moreno and Mejia, and that's why they paid him. And similarly, the substantive counts of the indictment say that. But also, on this record, it was the government's obligation to produce evidence excluding all reasonable doubt about whether Majestic was a participant in the conspiracy or whether the property belonged to another. When you're getting to that theory, are you again getting to your theory about the legal theory that wasn't in your brief? Because I don't understand why that's so, why if we exclude that theory, we don't read the indictment in the best light for the government, since they got the conviction. They did get a conviction. But if you examine the record for evidence, that would be sufficient to exclude all reasonable doubt about whether Majestic had some independent existence from Moreno and Mejia. But I don't find that in either that kind of certainty or discussion in either the Sixth Circuit case or in our case about the certainty that the corporate entity was, I mean, there's no discussion about it. You have to prove beyond a reasonable doubt that this entity, and you had to have focused on that, and your argument had to be, that's not what Judge Sutton was talking about. No, no. So that whole theory is, again, a new theory here. I think actually the reason he didn't discuss it is because he thought it wouldn't have made any difference. Oh, well, he went to great pains to distinguish the Fourth Circuit case. A pretty thin distinction, if you ask me. Actually, I don't think it is, Judge Monson. Well, if it's not a thin distinction and this corporation, Majestic, is, in fact, it says it's an LLC, and if it is a separate corporation, there's all kinds of law about the separateness of that, right? Well, there is for corporate law or for tort law purposes. Whether you could pierce the corporate veil is not the question. The elements of the offense are that the conspirators must have agreed to obtain property from another with his consent under color of official right. It was the government's obligation to prove beyond a reasonable doubt that the property belonged to another. And here, I mean, for instance, if you look at the record, for instance, that this testimony that the payments came from the LLC account, well, that's sufficient to establish that fact beyond a reasonable doubt. Well, it's true that they paid out the money from the agency. That's true, but the testimony in this case, you don't think it's sufficient to establish that this is an LLC? No, I certainly think it's sufficient to establish it's an LLC. And that the money came from the LLC? Yes, but I don't think it's sufficient to establish beyond a reasonable doubt that Majestic had any independent existence outside either the conspiracy or outside Moreno and Medina. But they're an LLC. They're an LLC. You've already conceded that they have an independent existence for tort law and for corporate law, but we have a new theory. Well, yes, I know it's not a theory of corporate law, Your Honor, but I think that the government cannot have it both ways. If this entity had any independent existence, suppose it did, it was not independent from the conspiracy. Right? The conspiracy was a conspiracy to get cars to go to this body shop. It is not unrelated to their business. The conspiracy is about their business. The theory was that they paid money out of their own. Are they a person in the corporate veil? No, I don't know. It's not that we're – Are they an unindicted co-conspirator? Is that what you're saying? If they are – This LLC is? They are an unindicted co-conspirator. It's their property that's being obtained. How are they any different than the entity in the Sixth Circuit case or in our earlier case? Well, in the Sixth Circuit case, there's no doubt that the entity, TEI Incorporated, really was an innocent third party. Right? It was owned by, you know, not the defendants. Right? It was not the – It was not Spittler's money. Well, the other side of these Hobbs Act things don't have to be innocent. Where do you get that? Extortion is bribery. Yes. Under the 1951 principles, settled principles. I kicked around a lot of Hobbs Act cases a long time ago when I was a prosecutor and as a defense lawyer. Bribery is extortion. Bribery is – Bribers are into it voluntarily. They're in the middle of it. They aren't really the traditional extortion victims that we think of, but we call it an extortion under the Hobbs Act because that's what the statutory term is. You mentioned it when you got up here. I agree. I didn't actually mean to use the word innocent in that way. What I meant is it was certainly property of another, someone outside the conspiracy. TEI Incorporated was certainly not in any sense a conspirator or participant in the conspiracy, and Spittler in no sense owned the money that he appropriated from TEI. It was – the issue in the case was Carpenter, the person who got paid, was a public official. The property he obtained belonged to TEI Incorporated. No one believes that the – Part of that is the feature of this act that we have here. Your man is in the opposite role of the defendant in the Sixth Circuit case. So yes, that's true, but I'm not sure how far it goes for you. Well, I think that it doesn't – I think that that doesn't make a difference. A conspiracy requires two people to have the same common criminal purpose. It doesn't matter if the payor does not have the purpose to obtain property from another, then the two people could not have agreed to do that together. Every time we ask you a question about something that makes a distinction, you say it doesn't really matter. Well, if I thought your distinctions mattered, Judge Shedd, I'd probably have to concede I lose. No, that's what we thought. Well, let me ask you then to distinguish it from our precedent. Sure. Oh, well, at Spittler – well, if you mean the Spittler case, Judge Monson. Is that, again, the case where you have the briber being the defendant at issue? Well, they were both – well, no, because the briber was – I mean, in the sense of the statute, I mean, the briber is not always a precise term. The person whose property was obtained, which is usually the briber, was not a defendant. That was TEI, Incorporated. And that is the distinction that Judge Sutton drew in the Brock case, and it's a good one, because the issue was whether Spittler, who was a corporate officer of TEI, was really sort of a victim. It's best thought of, I think, as a case about what capacities Spittler himself was really acting in when he got TEI's money out of its treasury and gave it to Carpenter. Was he a person who was pressured as an agent of the corporation, or was he in league with the extorters? And the answer was the latter. The way I read what was said in Brock was that he was distinguishing our president on the basis of how much this was a corporate entity separate and apart. No? Well, I think – Which I think – I think that's where you have a hard time distinguishing our case from Brock. Brock thinks that's key. Well, I think if that's the distinction that Brock drew, it would be very difficult to argue that Brock would have thought there was a difference between Mejia Moreno and Majestic and the two brothers and their jointly owned and controlled business in that case. So, yes, it is true that the distinction was the corporate difference between the person whose property was obtained. But that is a big difference, right? The criminal law, as Justice Kennedy said in Evans and his concurrence, is concerned in the usual course of things with motives and consequences and not with formalities of that kind, right? Where if two brothers operate a business together, no one else could possibly own this business or its money besides them. And they use their business to pay bribes, but don't steal it from a third party. Why that should transform the Hobbs Act's conspiracy provision into a prohibition on paying bribes, which Congress does not normally enact, right? I mean, I think an important thrust of the Brock opinion, which I'd be remiss if I sat down before saying it, is that the government's theory would transform the statute into a general prohibition on paying bribes through a rather circumlocutory means. And if all that is required is that two people use their business, which they own and control, and which Mejia, by the way, at JA 736 to 37, didn't even seem to know whether its charter had been revoked and they hadn't really paid their taxes or something like that, right? It is hard to read the record and believe that this corporation, if it was, it is a corporation at some points during the period, maybe not at others. If that's true, that it was separate from Moreno and Mejia, or that it was separate from the conspiracy, if it had been an unindicted co-conspirator, named so in the indictment, our argument would be the same. Do you remember Judge Shedd's question to you about finding the place where you found it in your brief? I think I conceded that we hadn't made that argument. I think Judge Shedd has another question. I want to just put this, to be fair to you, because I'm going to ask the government about it as well. Just a statutory construction and interpretation question. The word another. In the substantive offense, it has to be clear that another refers to the actor, correct? The substantive offense. That it refers to the actor? Yeah, the person. Whoever takes from another. Yes. That it's the actor. Right. So then I'm going to ask, and you can answer it briefly, but don't take too much time right now, but I want to put it on the table. Why does conspiracy change the reference of another in the substantive offense? I don't think it does, Judge Shedd, but let me just give you an example very quickly. Give me an example. Just give me an answer. It doesn't, but the content of the agreement has to be. A conspiracy is an agreement between two people to act for a common criminal purpose. Both parties must agree that what they are going to do together is to obtain property from another. So it doesn't change the reference. No, no, no. We'll talk about that, but I just want to put that on the table. Okay. It may be that you'll need to talk about it, but if we get to the government, I don't want your response to catch them by surprise. I understand. I may reserve that. Can I ask you another question? Kind of along that line, there was a different conspiracy statute used as the basis in Brock than there is here. Yeah. With different language. It is. Language that would sort of be more helpful to Judge Sutton's theory and your theory than that here. Well, I don't think that it makes very much difference, Judge Monson. The only difference I know of between the two statutes is that the 1951 conspiracy doesn't require proof of an overt act. But what we really mean, the argument we're really making, is that the inclusion of the separate conspiracy charge in the Hobbs Act provision, what it demonstrates is that Congress would not have meant to define the substantive offense of extortion or that conspiracy charge in a way that is multiplicitous of every bribe. No, no. I take your point. And maybe that's true if you look at the conspiracy language in the Hobbs Act. But if you look at the general conspiracy language, it doesn't have that. So it's conceivable that Congress decided, well, if you charge that and you can prove that, you don't have to go through these hoops. I think it would be passing strange if Congress decided to enact a conspiracy provision. That would surprise you? Well, this is a 371 conspiracy. Yes. Well, that's the general conspiracy statute. That's right. Two or more conspire to commit an offense against the United States. Yes. And that offense in this case. And it's a 371 conspiracy to violate 1951. But nevertheless, both parties have to have agreed that what they want to do. Well, the agreement, as you know, they don't even have to know each other. And no agreement has to be in writing. It doesn't have to be a written contract. It's a tacit agreement or understanding to carry out the criminal purpose of the thing. That's what I was getting at at the beginning. Two of these police officers, one other guy besides this fellow, is all that's needed. That's all that's needed. And whoever the tow truck people are, they're all of another. To me, it's pretty simple. To me, Judge King, the record does not suggest that. Well, I think the record's pretty good and the instructions are pretty good on that. The jury was entitled to pick and choose. You didn't get any special interrogatories or anything, did you? No, we did not get special interrogatories at this point. So we have to figure out in the light most favorable to the prosecution, consistent with the evidence and consistent with the instruction, whether you got another person in there who could be a conspirator and where the money came from, and then that renders your moot, your completely moot, this Brock argument. It seems to me we don't even have to, I don't know how it's even reached here under this evidence. If the government had preserved that argument, that might be right in any event. Well, we don't have to preserve it. We can affirm a criminal conviction based on settled criminal law principles. It's been in effect for years and years and years. The government can waive an argument and it's brief like any other party. To be sure, can I just ask you one final question? In the conspiracy count, it does list both of these people who the record tells us don't know each other. Right. And says that they and other persons, both known and unknown to the grand jury, did knowingly and unlawfully combine, conspire, et cetera. If they had known each other, is that the end of your case? You know, Judge Motley, if they had known each other. They worked together, you know. Setting aside the legal, if that had been the only theory alleged in the indictment and the government had produced evidence of it, which it did not. I think it actually, I think that would be, right? Right. But that's not the, that was not the case that we had. That was not the theory. It is a totally invented theory of what happened at this trial. Actually, I don't know that the government has relied on the fact that they were, although they are part of the same conspiracy and you know the web and the spokes and everything. And I think that different people, someone over here who doesn't know someone over here, often are regarded as co-conspirators. They often, they can be. But if instead what really happened is that the government put on a trial in which it purported to prove that Acasio and Moreno developed a relationship and agreed that they would exchange bribes for services, and that's the government's theory, which it was, that is not a conspiracy to commit extortion under color of official right. Because it is not a conspiracy where the two men agree that their common criminal purposes to obtain property from another may reserve the balance of it. Let the government take as long as it likes to. Well, you had a half an hour. Thank you. May it please the court. The conspiracy charged in this case and the conspiracy that was tried before the jury included, as your honors have already recognized, not just Acasio and Moreno and Mejia. It also included Manrich and other officers. The 50 officers, or close to 60 according to the trial testimony, and specifically with respect to Acasio, there is substantial evidence in the record of his interactions with other police officers. Officer Rodriguez, for example, who was one of the conspirators, the evidence in the record of Acasio was referred to Moreno, who first got involved in the conspiracy because another officer told him about it. I'll take your word for that. Does that distinguish this from the Sixth Circuit case? Yes, I think it does. Those people were the Lone Rangers? There was no one else involved in the conspiracy? Well, frankly, I think Brock is wrong. I think it doesn't matter. I just want to make sure we don't go there.  Yes, I'm sorry, Your Honor. I'm slow, but I understand that you thought Brock was slow. Well, I don't want to be seen as conceiving something. Let me say this. She's not slow. That I know, Your Honor. What it meant was that the Brock case is different because in that case, I believe the facts are that it was those two, the payors, were the only other conspirators, while here we have not. Well, actually, that's actually, I think. Yes, that's true, I believe. But here we have multiple other officers about which there was testimony. Officer Rilo, Victor Rilo, is one of the incidents. Can you argue that to the jury that there is a conspiracy? Just what you're saying. They conspired with other police officers to take money from these people, although Moreno and Mejia conspired with Ocasio. Ocasio also conspired with other people. Did you argue that? I believe it was whether we specifically said it in those words. I just don't recall, Your Honor. Was that what you argued to the jury, that it could be people? There was a big conspiracy with other people involved, so that would support the legal theory that taking money from Moreno, whether it's majestic or not, suffices. Was that your theory of the case? It was our theory of the case, I believe. In terms of whether we specifically argued it, though, Your Honor, I don't recall whether it was really a focus of argument. It was the nature of the evidence really was. And we brought in this other evidence of the Victor Rilo incident is a perfect example of that, Your Honor. If your colleague could get up and rebuttal and say that, in fact, you never mentioned any of these other people in closing argument, you wouldn't say if he had the record, you wouldn't say he was lying. It doesn't seem to me you remember too well. I don't remember whether we specifically did, but I believe we did, Your Honor, because Victor Rilo, that's one of the incidents that would be part of that, that Ocasio is bringing in another officer. He himself was recruiting another officer, and we played the tape in which Officer Ocasio is talking to Moreno about the Victor Rilo incident and saying that he was trying to set up his Southwest connection, and Southwest was the district where Officer Rilo was. What do we do with the distinction that was raised this morning about the legal basis and the factual basis for the jury determination? In other words, you know, in some circumstances, when there are two alternate legal theories as compared to two alternate factual theories, one does require reversal, one doesn't, if one of those theories or factual scenarios is wrong. What do we do about that in this case if we consider it? Well, I think here the evidence supports both theories, supports the legal theory if Your Honor's question is what if the legal theory is correct? I know that, but isn't the law that at least in one of those scenarios you have to reverse? I can't remember right off, but one of them, if there's an alternate factual theory and you can't distinguish, then the verdict must be reversed, whether it's an alternate legal theory. Do you know what I'm talking about? I'm not sure I'm following, Your Honor, because I guess what... I'll answer the question then. Okay. Because I take it he's making a claim that there's at least a factual and maybe even a legal theory under which the jury could have convicted, and since we can't distinguish that as we must, then the case has to go back. If there is a reading that supports an illegal verdict, reading of the law and the facts that support an illegal verdict, but if you don't know that, he didn't argue it. He didn't argue it, and the government didn't. It did not come up at the trial, Your Honor, although I would say that under my scenario... It wouldn't come up at trial. It would come up at post-trial motions. Well, it didn't come up at post-trial either. With respect to the... Could you win if, in fact, the jury thought the other people in the conspiracy were... First of all, you think Majestic is a third party. Yes. You think Majestic is the another in the conspiracy count, correct? It can be, yes, but I think there's more than one of another. I didn't say you think it's the only one. Yes, it's another, yes. Okay, so what evidence is in this record about Majestic except for the allegation and the complaint about that they're an LLP? The evidence regarding that is Moreno's testimony at JA 656-57. And what does he say? He says that it is an LLC, that it was a corporation, that it was owned 50-50 or 50-60, 60-40 between him and his brother. Aren't you overstating that a little bit? I'm sorry? Aren't you overstating that testimony slightly? That it's an LLC or corporation? He says it's a corporation. He says it's a corporation, yes, Your Honor. He says it's a corporation? That Majestic was a corporation. He says Majestic is a corporation. Yes. I believe it's at 656. The cellular telephone bills that were introduced for Moreno are in the name of Majestic LLC. He was asked if it was a corporation. Yes. He said, I think it was an LLC. Yes. Where does he say it was a corporation? He doesn't say those words, does he? I'm sorry, I was not quoting, Your Honor. I was just saying I think what Judge King was pointing out, that it's an LLC. He's saying it's a corporation, a limited liability corporation. The cellular telephone bills are in the name of Majestic LLC. The bank account records indicate LLC, although some of them also name on the checks Moreno's name as well in addition to the LLC. The insurance company checks are deposited into the business account. So that's in terms of the record of the money going only into the business account and coming out of the business account, all the payments. So you say that when he says, I think it was an LLC, in response to was it a limited liability company, his response, I think it was an LLC, you think that's enough to establish beyond a reasonable doubt that it was, in fact, some kind of corporation or separate entity. That in addition to the fact that there were cell phone records introduced indicating it's an LLC, the bank records indicate it's an LLC. They say on it LLC? The bank checks, yes, at Exhibit 75A. Does such an entity have to be registered with in Maryland? I think it usually is, but that did not come up. There's no evidence of that? No, it didn't come up at the trial, Your Honor, whether it was registered at that time, I don't believe. So then if it is a separate entity, and you believe that's enough evidence from which a jury could reasonably find beyond a reasonable doubt that it is a separate entity, then your theory is at a minimum you have a third entity another? Yes. For any conspiracy between Moreno or Mejia and Acasio? Yes, Your Honor. The other point that I wanted to make is that the defendant's position about the language of the statute, the statutory construction argument that they raise, is based on a faulty premise, and I think the Brock Court did the same thing, which is the assumption in that construction ---- as I read, the Brock Court's analysis was a clause. They said it has to be another, which means a third person. I think that was their analysis of what the statute says. Well, but they also indicated that the of another could not be a co-conspirator. Right. And I think that is what's based on a faulty premise, because the statute ---- and that is based on a reading of the use of the word or conspires in the statute and with consent. And the incorrect analysis, I believe, Your Honor, is that that presumes that consent, with consent, means agreement to conspire, agreement to violate the act, and that is not what consent means in the context of the Hobbs Act. Consent means simply to make the payment. The example would be a building inspector who is the public official. Yeah, you have to ---- there has to be ---- well, you have to look at the language of the statute first. Right. To see what another means, and that's why I asked the question of the government. I mean of the other side. And when you look at the substantive statute of extortion, the another ---- to me, the statutory construction on just this limited issue, the question is what does another refer to, another in reference to whom? You go to the substantive statute, and it's clear that another is in reference to the actor, correct? Yes, Your Honor, I agree. Whoever takes from another. So then that's why I ask, how does conspiracy change the reference of another? And, Your Honor, I don't think it does because another refers to the public official. He's the one who's getting the property from another. You see it. I was trying to think of an analogy, and I don't think I came up with a good one, but I was thinking about conspired to murder. If murder is the act of taking another's life, you could then conspire with a person to commit murder, but you don't have to do the act that's actually the murder, actually the substantive offense. That's the best I could do sort of to come up with something, but it strikes me that another ---- I just don't understand the argument because I want to go to the statutory language first and see if it's in the statute. And it strikes me that the building, as I said, another necessarily refers to the actor in the substantive count, and I just don't know how conspiracy changes that. It is an odd statute because the statute has in it with consent, but that really is of taking the money. Yes, Your Honor, I agree. Because the example that I came up with ---- But then if you do that, it strikes me then it serves a policy purpose, I think, of distinguishing between a willing victim and an unwilling victim in the sense not that you pay them with consent. We pass that argument because everybody in the extortion situation pays with consent. Sure. But do you see my point that it separates willing conspirators and extortion rackets and those who pay just to get their due under law? Yes, Your Honor. I think that's exactly the distinction in the statute and why it has the word conspire in there because an example that I came up with is you have a building inspector, a local building inspector, and a developer comes who's not very sophisticated, wants to develop a property in the inner city. And the building inspector tells this developer, you need to give me cash. It seems to me the clear distinction is this. Two towing companies, and you have that towing list like all police stations do, and this company is number two on the list. And as this case, you go, we'll pay you money if you use two eight times before you go to three. That's a willing victim. Yes. The other victim is somebody to whom the officer goes and says, you're entitled to be the second call, but unless you pay us money, you won't ever get called. So one is the victim paying money just to get what is their otherwise lawful right versus a willing victim who, victim in the sense of this arrangement, who's paying to get more than he's entitled to. Yes. And are those two victims distinguishable for purposes of conspiracy? In other words, I quite take the discussion, but I'm not sure where that goes. I think those two victims that Judge Shedd just gave as an example are not conspirators because one doesn't, it is extorted without willingness really except pays. The one who then pays knowingly or the officer who then extorts and says, I'm going to put you, you know, you can't go second unless you pay me, that's an innocent victim. The other one is an innocent victim in the sense that that person, the officer says, you get on the list. You didn't listen to my hypothesis. I'm sorry, maybe I'm getting confused. I think your answer has to be one of them is a conspirator. Oh, Your Honor, I'm sorry. I'm still thinking of my building inspector. No, no, Your Honor, absolutely right. One is because one is a willing participant in the conspiracy, in the payment, to get something he's not entitled to. I think we understand your answer now. I'm sorry, Your Honor. I apologize. But you have to answer the question. Do you find that distinction between conspirators in the statute itself, that distinction? Yes, because conspiring has a meaning. To conspire to commit the substantive act of extortion, and that's what the second or the first example that you gave, that's what that person is doing. The person is agreeing to make a payment that is in violation of the substantive part of the statute. Willingly. Yes. Willingly for additional gain. Yes. But that's... Willingly for additional gain. Well, I mean, it's to make a payment to an officer or to an official under color of official right. It has nothing to do with it. Well, I think it does, Your Honor, in the sense that under color... It has nothing to do with willing or not willing. I don't see that. But in terms of the intent to commit the... To conspire to commit the violation of a substantive act, the violation of the substantive act in this context is under color of official right, which means getting... But in Judge King's examples, the person knows that the person that they're bribing is acting under official right and is doing it knowingly. I don't think that makes a difference in the sense of the conspiracy to commit under color of official right in the substantive act. I mean, there are cases, you know, the briber can be a willing participant. Right. And it's still a substantive violation. But you said there was a distinction between those two people. And that's what I'm trying to tease out. Why is there a distinction? I mean, maybe there is. Because both of... It's not like you didn't know what you were doing. Right. Even the person that's being forced to in order to get his gain. He knows what he's doing. He knows it's an official. He knows he's giving it to him because of the official's job. And he's doing it willingly. But I think he's doing it because... I mean, I think that's the meaning of under color of official right and what the Spitler case has tried to distinguish, where the court said that there is that distinction between the mere victim... Yeah, but... And the other end of the spectrum. Well, yeah, you're veering into an area where I think the Supreme Court has sort of punched you down. I don't think that that distinction works anymore. It strikes me. I don't see... Well, you tried to find it in the statute. My question wasn't that it was in the statute. My question that a reading of the statute leads to a result that is consistent or consonant with those kind of distinctions. Where both what I call the willing and the unwilling victim, they both paid to somebody, knowing they're paying to somebody, to that somebody who's acting under color of state law. None of that. That's all the same. It's what beyond that, if we should see the distinction between the person who is paying or being extorted just to get what he's entitled to versus somebody who's paying to get not only what he's otherwise entitled to, but more. And if there's a distinction in the statute, you think there is in the word conspiracy. But that's what I was trying to draw back to, the reference for another. And the reading of another allows a difference between the willing and unwilling conspiratorial statutorily. But I was just asking if you could tease that, like Judge Mott says, tease that out for me. I don't want to belabor that much more. I'll let you move on with your argument. Okay. In respect to the... Tell me again why you win. Just tell me two or three sentences why you win. Because Majestic is a third party, isn't another. Isn't another. I mean, is another. Right. Was not charged with conspiracy. You think that even under this scenario, even if Majestic wasn't a third party, you could still have a conviction? Yes. Because of the willing, unwilling victim and that another is required in the substantive offense only. And that Marino was conspiring with Ocasio for Ocasio to act on the color of state law and commit the offense. Yes. Yes. Any way else you win? Was there any argument ever that Manrich or Manrock and Ocasio were conspiring together? No. Not specifically. The evidence was they did not know each other. I understood that from the brief. So would you acknowledge that we couldn't tie the conspiracy conviction for Ocasio to Manrich? No, I would not. Because I think it is a wide ranging conspiracy in which all of these officers were participating and they didn't need to know each other. And the jury could have decided that. Yes. They didn't have to accept your theory. Do you think, do you say that the jury had to accept your theory? No, I agree that they did not have to accept that theory. But, you know, the wide ranging, I think we're covered under. And the jury didn't, you didn't, you said you didn't, that Majestic wasn't a conspirator because you didn't allege they were a conspirator. But there was all kinds of references in here to known and unknown and all that kind of stuff. The jury was entitled to a lot of things here. A lot of things. They could have rejected every, every defendant you had alleged here, except two or one more and somebody that's unidentified. And decide that everybody was the others if they wanted to.  Under the instructions from the judge. Yes, your honor. And there was sufficient, extensive evidence of others being involved, including at least the two other officers that I mentioned, Rodriguez and Rilo, who were directly communicating and dealing with Ocasio. In fact, Rodriguez was the officer who was in the tow truck with Moreno on one of the incidents in which Ocasio called him to get, and they gave him directions of where to come to tow the car. So. What about the restitution issue? How is that restitution for the Ocasio repair tied into this conspiracy? Your honor, I see my time is up. May I answer the question? I think it is because the language of the conspiracy part of the statute encompasses the aspects of the insurance fraud. That sounds like a mail fraud conspiracy. A fraud, that's a different deal. Well, but it's part of it's alleged, your honor, as part of one of its part of the object of the conspiracy is to to send the cars to get the insurance money to pay the officers. It's alleged that that money is then or the way the evidence came in. That money was then used to keep the conspiracy going to keep that didn't feel like overreaching to you. I don't, your honor. The language in the in the manner and means portion of the conspiracy. You thought you your case was presented that when Ocasio took his own car there for some kind of insurance fraud or payback to him personally, that was part of this big conspiracy. Yes, your honor. He was paid three hundred dollars by Moreno, just like with all the other cars. He was paid to send his car there. He got three hundred dollars. It's the same thing. But what did the insurance company didn't want to extort? It was. Well, the insurance company paid the. What happened was extorted. It was defrauded. I don't think it. I think it was ripped off. Well, yes. It didn't. It wasn't obtained with its consent based on the badge. But it was it the harm caused to the insurance company was was closely related deal. It's closely related. It's pretty hard to say it's part of this conspiracy. Maybe. Well, I thought that was the biggest part of your case. Well, yeah, yeah. Pretty good case. Other than the rest of you. If Ocasio had walked into this and got a discount on a can of paint to touch up his car, would that be part of it? Got a discount from Majestic. Yeah. No, your honor. I wouldn't. Because he's not he's not getting paid three hundred dollars. But he did get this county paid ten dollars for the can of paint got a can of paint. He gave my dollar back. Well, that's not covered by the allegations of the indictment, which I would submit to your honor. That allegations in the indictment is this covered the manner and means part. Paragraph 13 at Joint Appendix 51 52. It's alleged that the as part of the manner and means of the conspiracy to. Did he use his official position to cause that vehicle to be delivered? Or did he just drive his car over there and say, fix it? Well, I think it's paragraph 13. That identifies Henry Ambo. I'm sorry, your honor. The best at the superseding indictment, the superseding and superseding indictment. And that's what you want. And that's one. Yes. Joint Appendix 51 52. I might maybe I'm the best you have. I'm sorry. Paragraph. Progress F. Yes. C, D, E and F. There we go. Which is part of paragraph 21. I'm so sorry. You're on F. Sorry. 21. You're on F. Thank you. That the officers were instructed to. Mine's not 21 F. Mine is. May I get the Joint Appendix? I'm on page 51. Me too. And then you go into 52. 13. 13 F is mine. Is what I have. May I get the Joint Appendix? So are you allowed to win under any indictment we have up here at all? Yes, your honor. But. Well. But we allege in there. Three indictments. There's a suit. There's this indictment and the superseding superseding. All right. But your honors, what what is part of the conspiracy? Part of the scheme that's alleged how this conspiracy worked for the extortion to happen included that the officers were instructed to tell the victims not to call their insurance company. That's alleged in the indictment that they were told that the officers either indicated on their reports falsely that the car was towed or that they left it blank intentionally. So the car was either towed or not towed. But the insurance company got charged. They cars were towed even when they were drivable to generate the money. But does that have any reference to the toll list that this conspiracy. Does that have any reference to the toll list? In other words, just majestic. Got favored treatment over other tow companies. It wasn't even on the list, was it? No, it wasn't. That was that was in. Isn't that the point that the conspiracy was in a very general sense that this company got favored treatment over tow companies that should have been called? Yes, your honor. But it also included in that. It's not just that. It was that this is how the conspiracy worked to benefit the officers because they couldn't be benefited if this if they weren't generating this money. Isn't that where the color of state law comes that they do something to to veer away from that list? Because, well, as well. Yes, your honor. But wait, wait a second. Just because an officer has his uniform on and walks there and does some business, that doesn't make it on the color of state law, does it? Except that in this case. But my answer to my first question would be it does. No, not necessarily. No. So it seems to me, then, that if an officer just takes his own car somewhere and gets a discount, that is not the same as an officer steering business in violation of the towing list. It's a mess, too. Both of them bad, maybe both of them illegal, but I don't. Except he got an extortion payment for it, your honor. He got three hundred dollars, just like he did with the others. That's what you call an extortion payment. Well, that's what and that's what Moreno testified, that that's what it was. He said he paid him so that he would keep bringing cars. Pardon me? He paid him to keep him happy. Yes. And to keep sending the cars. So it's part and parcel of the scheme itself. Okay. Thank you, your honors. Thank you. Ms. Jolin? Thank you, your honors. I just I just want to make I just want to make three or four quick points. First, the government said just a moment ago that it was their theory at trial that Ocasio conspired with other officers, but they didn't. But maybe we didn't argue it. I think it's strange that you would have a theory that you don't argue. But if you look at Joint Appendix page 1206, the closing arguments, this is there's a couple of paragraphs there that the government at least specifically points to what they think the evidence of the agreement. And it's it's about Moreno. And it's a little unspecific, but it doesn't mention other officers. That's point one. Point two, Judge King, you're I take your point and Judge Shedd, too, about about about waiver and preservation. It is true that we didn't we didn't raise in our brief the point, which is as well settled as anything else in the criminal law. See, Skilling versus United States. If you'd like a citation, Judge Shedd, for the proposition that if a conviction rests on a legally invalid theory, it's constitutional error to affirm it. But if the government had attempted to defend in its brief the conviction on the on the theory that all that they needed is in the light most favorable to the verdict to the to the jury's verdict evidence. You think the legal error here is it could be that the conviction could have come on a conspiracy. But if it was just with somebody who was in the conspiracy and not clearly a third person, that would be the legal flaw. I think that's I think that's right. Yes, that's right. Our argument, just to just to recap, our argument is the government's theory was that Ocasio conspired with Moreno and Mejia, and that is not a legally valid conspiracy. Perhaps just I just want to say as quickly, if they conspired with Majestic, we say Majestic is an alter ego of those two, not really another. But but but but if Majestic is seen as an independent third person, then you would say the jury didn't have to necessarily think the conspiracy was that. Tell me that if the jury finds that Majestic is a third party, how is that legally invalid? I think that I think that the truth is that there isn't really enough evidence to exclude reasonable doubt about whether Majestic is a is a third party. You never say you're wrong about that. If I think that you're wrong, if you if I was wrong about it, I want to get this. Yes. If there if there were I agree that if there were real evidence in the record that there were some other another person in the conspiracy like T.I. If you think I know I'm asking you that I'm saying if in fact. For the purposes of my question, the jury is capable of finding and can legally find appropriately find that Majestic is a third party. Do you lose on your legally invalid theory? No, Judge Shedd, because it is completely clear that one of the theory that that was not the only theory submitted to the jury. The other theory is that one of those theories is that the property came from Moreno. And the way that you know that for sure is that if you look at joint appendix pages fifty four to fifty nine, the substantive counts of which Ocasio was actually convicted, not one of those counts suggests that the money was owned by Majestic. They all say Moreno. So we know that at least one theory submitted to the jury that the government that the money came from Moreno. That theory is invalid. If the government had said in its brief that it doesn't matter. You say it's at least possible here that the verdict is at least possible that the verdict was based on the jury's belief that the another was Moreno, that the other was Moreno, that that then under a statutory reading of the law, that is a legally invalid theory. And for that theory, then of a potentially legally invalid support for the verdict, you'd have to reverse because you don't know which it was. That's right. That's right. So you accept the proposition that Majestic was a corporation. I think it's undisputed. The evidence I think I think it's not very clear. Let me tell you what I think the record does say. At some point, it was an LLC. There is some some testimony in the record that at some point it may have become a corporation, which I think is what my friend was trying to say. The evidence was that it was it was at six fifty six. Is it a corporation? I think it's an LLC. I think it was an LLC. I think that there was a point in time somewhere during this period where it may have become a corporation. But also, if you look, I think it's J.A. 736 to 37. He said he thinks it was. And so you think that's that statement alone, if believed by the jury, is not sufficient to establish it was a corporation. I know. I think that the status, I think two things. First, I don't think that that that sets aside our legally invalid point about Moreno. And second, the mere fact that I didn't ask, I understand. So the mere fact that it is a that has the corporate form, I don't think really makes it another for that. Would you accept it had a corporate form under this evidence? I think it had some corporate. Well, it says that the the uncontradicted evidence is I think it's an LLC. Yes. And the jury could accept that. Yes. And I just want to say it's seven. LLC means what in Maryland? A limited liability company. Right. That it has it does have a separate juridical existence for corporate law purposes. I see that my time is expired. Your time is up and you've gone way over. But you started all this. I think trying to make the argument. Well, OK. Maybe we didn't make the argument I'm making now in my brief. But the government didn't make it didn't say in his brief in its brief what the court seems to be interested in. And therefore we can't be penalized for it. But the government certainly made it in its brief. The argument that this was an independent corporation. And that thing was another. Yes. And so just to be clear, I think these are two totally separate problems. So one is a factual point and one is a legal one. The government, I agree, did make the argument, the factual argument that Majestic was another right that there is evidence in the record to support that proposition. As a factual matter. Now, we think that that's wrong for the reasons we've said, that if you read the whole record, you won't agree with that. But whether even if that's true, that does not affect the point on which I think that I was trying to make before, which is that if the verdict could rest on that theory or on the theory or even on the theory that Ocasio conspired with, that Ocasio conspired with other officers, both of those are factual theories that might be legally valid. But the fact that that doesn't affect the legal validity of the theory that the property came from Moreno and Mejia. But that is an argument you've just made for the first time here today. Well, no, I think that the legal invalidity of that theory is not. Skilling is I'm going to look in this brief. No, no, no, no. No, of course not. I'm sorry. I may be misunderstanding you. So try me one more time. I will. I will. I will try one more time. It is certainly right that if that that there may be factual theories that the government that could support the jury's verdict. But the problem is that there is a legally invalid theory. Well, I don't want to concede that because, as I've said, we don't think that's true. But the legal the theory that the that the jury's that the argument that they made that that the court is interested in now is that if there's any factual theory that might support the verdict, then the legal invalidity of the Moreno doesn't matter. If they had said that in their brief, right, if the government had said the fact that the Moreno that the Moreno as the as the briber, that might be invalid, but that doesn't matter because there is some other factual theory. The judge jury could have accepted had they said that we would. But they certainly did argue in their brief about the corporation. That's what I keep saying to you. Yes. And in response to that, you didn't say, oh, well, that's that's that doesn't matter because of skilling. No, we but we know we did not. You're right that we did not cite skilling. What piece am I missing? I don't want you to go out of here to think that I just really didn't even understand your argument. No, I don't think perhaps you're not misunderstanding the argument. But I but I but I think that, you know, to the to the extent that that the court is sort of embellishing a little bit, the government's arguments made in their brief on the theory that it's well settled. Skilling is equally well settled. It's pretty it's pretty clear that that if there's a legally invalid theory of conviction, that it's unconstitutional to affirm it. Thank you very much. You don't you don't care much about this restitution issue, I don't suppose. No, actually, Judge King, we well, we my client does care about it. I mean, it's it's it's a lot of money. He's got a jail right now, right? It's just in a halfway house. But but yeah, I mean, he does care about it. It's you know, it's it's a lot of money to him and him. And and just I would be remiss if I didn't say, I mean, the real the thing it really illustrates, by the way, is how far removed this uncharged insurance fraud about which the district court held a mini trial was from the conspiracy charge. And if the court comes around to to believing the conspiracy charge has to go. So you're you're very surprised that the government charges people under conspiracy and try to sweep everything possible into the. No, Judge, I think no one is surprised by that. And I think, in fact, that is precisely why you would believe that the conspiracy charge prejudice, that the trial of the substantive counts, because that's why the government charge. But you but you think the restitution, even that goes beyond any bounds that somebody might see. That's a set. But for total, for all the reasons that the court suggested in his questions and for Judge Moss, I think your opinion in Davis from earlier this year sort of squarely controls this problem. We will come down and first of all, Mr. Owen, I want to understand your court appointed. And we want to thank you for your service. You've done an absolutely superb job for your client. We will come down and greet the lawyers. I think we'll take a brief recess.
judges: Diana Gribbon Motz, Robert B. King, Dennis W. Shedd